UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| DWIGHT RYAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 11 C 1257 |
| | ) | |
| PACE SUBURBAN BUS DIVISION OF THE REGIONAL TRANSPORTATION AUTHORITY, an Illinois municipal corporation, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendant Pace Suburban Bus Division of the Regional Transportation Authority's ("Pace") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and motion for sanctions pursuant to Federal Rule of Civil Procedure 11. For the reasons set forth below, Pace's motions are denied.

## **BACKGROUND**

This case arises out of Pace's adverse employment actions which Plaintiff Dwight Ryan ("Ryan") maintains were in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615 *et seq.*

Ryan worked as an Inspector Technician at Pace since the late 1990s. In January 2008, Ryan suffered an on-the-job injury and informed his supervisor that he was experiencing back pain. Ryan was placed on medical leave as a result of the injury. On April 24, 2008, Ryan's physician indicated that he was fit to resume his employment. Before Pace allowed Ryan to return to work, Pace required him to submit to an Independent Medical Exam ("IME"), to gauge Ryan's physical ability. After performing the IME on May 13, 2008, the administering physician recommended that Ryan return to work with light-duty restrictions.

Pace's Benefits Coordinator Marlene Wenzel ("Wenzel") contacted the IME administering physician to obtain more specific information regarding Ryan's physical restrictions. The physician indicated that Ryan could sit for twenty minutes at a time before having to stand or walk. The IME physician concluded that Ryan could perform his job if accommodations were made for him.

Despite the evaluation, Pace required Ryan to undergo a Functional Capacity Evaluation[1] ("FCE") to test Ryan's ability to perform the essential components of the Inspection Technician position. Wenzel provided the physician administering the FCE with a job description of tasks typically executed by an Inspection Technician, to aid

---

[1] A Functional Capacity Evaluation is a test performed to quantify the maximum physical exertions of a participant in relation to a base level of performance, usually provided by a job description.

in the accuracy of the FCE. The results of the June 2008 FCE ("June 2008 FCE") indicated that Ryan was only qualified to perform physical work activities at a sedentary Physical Demands Characteristics[2] ("PDC") level, whereas Ryan's position as an Inspection Technician was categorized in the job description provided by Pace as light PDC.

After Ryan's June 2008 FCE, Pace assigned him to a position in customer service. The position allowed Ryan to sit at a desk and move around every 15 to 20 minutes. Pace maintains that they only intended for Ryan to temporarily fill the position until a permanent employee could be hired, with the hope that Ryan's condition would improve enough to resume his duties as an Inspection Technician. At the end of October 2008, Pace told Ryan that he was being placed back on short-term disability because it had filled the customer service position with a permanent employee. In early December 2008, Ryan's physician released Ryan to return to work. Around the same time, Pace contacted Ryan's workers compensation attorney and conveyed that they were not going to let Ryan return to work and instructed Ryan to look for other employment.

In January 2009, Pace informed Ryan that he would be required to submit to another FCE in February ("February 2009 FCE") with Pace again providing the FCE

---

[2]Physical Demands Characteristics is a chart developed by the U.S. Department of Labor which lists the occupational requirements for physical exertion.

physician a job description report. This report differed from the one offered for the June 2008 FCE, in that it increased the physical demand rating of Inspection Technician from light PDC to medium PDC. During the February 2009 FCE, Ryan maintains that he was required to perform tasks that he never had to perform as an Inspection Technician, such as lifting a heavy box and walking with it, running on a treadmill, and going up and down stairs. During the course of the evaluation, Ryan complained to the physician about the physical requirements of the exam. Pace received the February 2009 FCE results on February 19, 2009. The results indicated that Ryan was unfit to perform the requirements of the Inspection Technician position. As Ryan had exhausted his short-term disability benefits, Pace terminated Ryan's employment on February 20, 2009.

After Ryan was terminated he began looking for other employment. Following a prolonged period of unemployment, Ryan applied for disability benefits with the Social Security Administration ("SSA") on December 21, 2011. In Ryan's SSA application for disability benefits ("SSA application"), he stated that because of his condition, he was only able to lift four or five pounds, stand for one or two minutes, walk for periods up to fifteen minutes with assistance, and sit for between ten and twenty minutes at a time. Ryan went on to report that he seldom knelt or bent over and could not climb stairs. He also showed increased cognitive difficulties, such as poor memory, inability to complete tasks, and difficulty concentrating. On February 12,

2012 the SSA granted Ryan's disability benefits request. This determination was based on the finding that Ryan's injury occurred on October 31, 2008, his last day of work.

Ryan filed an amended complaint on May 19, 2012 alleging that Pace discriminated and retaliated against him in violation of the ADA and the FMLA. On May 8, 2012, prior to the close of discovery, Pace moved for summary judgment under Federal Rule of Civil Procedure 56 and for sanctions to be levied against Ryan's counsel under Federal Rule of Civil Procedure 11. Both motions are ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Winsley v. Cook Cnty.*, 563 F.3d 598, 602-03 (7th Cir. 2009). A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-moving party. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010). The moving party must identify the specific portions of the record which it believes establishes the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

## DISCUSSION

Ryan alleges that Pace violated the ADA by discharging him instead of providing him reasonable accommodation for his disability. Additionally Ryan asserts that his complaint about the rigors of the February 2009 FCE and his successive firing constitute an ADA retaliation claim. Ryan also alleges that Pace unlawfully interfered with his reinstatement back into his prior position as an Inspection Technician in violation of the FMLA.

Pace moved for summary judgment in this case, arguing that Ryan is judicially estopped from pursuing his ADA discrimination and retaliation claims by virtue of the answers given on his SSA application. Secondly, Pace argues that Ryan was never entitled to FMLA benefits because he could not perform the essential functions of his position when he was fired. Lastly, Pace argues that Rule 11 sanctions should be levied against Ryan for instituting a frivolous claim.

**I. ADA Claims**

**A. ADA Discrimination**

The ADA prohibits employment discrimination based on an individual's disability. 42 U.S.C. § 12112(a). ADA discrimination occurs when an employer fails to make reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability, unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). To succeed with a claim of discrimination under the ADA, a plaintiff must establish that: (1) he has a disability as defined under the ADA; (2) he is qualified to perform the essential functions of his job, either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of the disability. *Winsley,* 563 F.3d at 603.

Pace asserts that Ryan is judicially estopped from asserting that he was able to perform the functions of his position by virtue of his responses on the 2011 SSA application. The doctrine of judicial estoppel "protect[s] the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 914 (7th Cir. 2005); *quoting New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). While judicial estoppel is an equitable remedy not readily reducible to a rigid test, the

Supreme Court in *New Hampshire* articulated three factors that act as "general guideposts that must be considered in the context of all the relevant equities in any given case." *In re Knight-Celotex*, No. 11-3588, 2012 U.S. App. LEXIS 18642, at *15-16 (7th Cir. Sept. 5, 2012) (citation omitted). Those factors turn on whether: (1) a party's position is clearly inconsistent with a position taken earlier; (2) the party prevailed on the basis of the prior position; and (3) "the party asserting the inconsistent position would derive an unfair advantage, or impose an unfair detriment on the opposing party if not estopped." *Jarrard*, 408 F.3d at 914-15, *citing New Hampshire*, 532 U.S. at 750-51. Notwithstanding the *New Hampshire* factors, the Court decides whether judicial estoppel is an adequate remedy with all the relevant equities of the parties in mind. *In re Knight-Celotex*, 2012 U.S. App. LEXIS 18642, at *15-16; *citing Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006).

Pace maintains that Ryan succeeded in obtaining disability benefits by representing to the SSA that he was unable to work as of October 31, 2008, several months before he was ultimately terminated by Pace. A plaintiff's sworn statements in an application for disability benefits that he is unable to work may negate an essential element of his ADA case. *Butler v. Village of Round Lake Police Dep't*, 585 F.3d 1020, 1023 (7th Cir. 2009); *citing Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). A plaintiff cannot avoid summary judgment by merely asserting that he is a

qualified individual for the purposes of an ADA suit after offering inconsistent testimony at a prior time to obtain disability benefits. *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 791 (7th Cir. 1999). However, a claim to acquire SSA benefits and an ADA claim are not always mutually exclusive, and a plaintiff may nevertheless proceed on his ADA claim if he can sufficiently explain the discrepancy. *Butler,* 585 F.3d at 1023; *citing Cleveland*, 526 U.S. at 806.

Pace bases its argument on Ryan's SSA application in contending that Ryan was not able to perform the essential functions of his position, either with or without reasonable accommodation. Ryan stated in his SSA application that he could not hold any full-time or part-time employment due to his disability, could not perform any auto repair and rebuilding, could only stay awake for one to two hours at a time, and could lift up to four or five pounds. When asked by the SSA what he was capable of doing before his injury, Ryan stated that he could freely engage in full or part-time employment, yard work, auto repair, and recreational activities. Based on Ryan's SSA application, the SSA determined that Ryan was completely disabled as of October 31, 2008.

Pace primarily relies on *Cleveland v. Policy Management Systems Corp.*, as the foundation for their estoppel arguments. In *Cleveland*, the Supreme Court determined that a plaintiff's statements indicating the existence of a disability, made for the purpose

of acquiring disability benefits, do not automatically estop a subsequent ADA claim. *Cleveland*, 526 U.S. at 805. A plaintiff may claim to be totally disabled in an action to recover disability benefits under the SSA and subsequently declare their qualification under the ADA, provided that the plaintiff shows an apparent inconsistency between how the ADA and the SSA define "disability." *Feldman*, 196 F.3d at 790. When an ADA plaintiff previously testified to having a full disability for the purposes of acquiring disability benefits, and subsequently claims to be able to "perform the essential functions" of the position, the plaintiff must submit an explanation for the inconsistency. *Cleveland*, 526 U.S. at 807. An inconsistency may be explained by the "changing nature of an individual's disability which may change over time, so that a statement about that disability at the time of an individual's application for SSA benefits may not reflect an individual's capacitates at the time of the relevant employment decision." *Id.* at 805.

Ryan contends that the inconsistencies between his condition as reflected in the 2011 SSA application and the injury underlying his ADA claim can be justifiably explained by the three year lapse in time between his discharge from Pace and the SSA application. Ryan's application clearly states that his injury occurred on October 31, 2008. However the extent of Ryan's injury in October 2008 cannot readily be discerned from the answers given on the December 2011 SSA application, which Ryan filled out

nearly three years later. Ryan gives a detailed account of the activities that he could perform and how his pain affected the quality of his life. Since the majority of Ryan's answers are framed in the present tense, it is not unreasonable to conclude that Ryan was assessing his ability to work and the extent of his injuries at the time he completed the SSA application, rather than retrospectively on October 31, 2008. Additionally, Ryan testified in his deposition that he did not become totally disabled until two years after he was fired, which is indicative of a deteriorating condition. Nearly three years elapsed between Ryan's termination at Pace in 2009 and the completion of the SSA application. This passage of time supports the inference that Ryan's injury may not have been as severe in 2009 as it was in 2011. The inconsistency between Ryan's 2011 SSA application and his ADA claim have been satisfactorily explained and therefore the direct inconsistency contemplated in the first prong of the judicial estoppel analysis has not been satisfied.

Additionally, Pace argues that since SSA made the determination that Ryan's injury occurred on October 31, 2008, and therefore was totally disabled on that date, he could not have performed his job properly for the purposes of his ADA claim. This argument fails to consider the extent that ADA claims and statements made for the purposes of obtaining SSA benefits may co-exist without direct conflict. *Cleveland*, 526 U.S. at 807. An ADA suit claiming the plaintiff can perform his position with

"reasonable accommodation" may be consistent with a subsequent SSA claim that the plaintiff can not perform his position, with reasonable accommodation. *Id.* at 803. SSA determinations of a disability do not contemplate the ability to perform a job with a reasonable accommodation. *Id.* The ADA's consideration of an accommodation, in assessing the ability of an individual to perform the functions of his position, is a distinct difference between an ADA claim and a determination for SSA benefits. *See Id.*

Although the SSA determined that Ryan was totally disabled as of October 31, 2008, Ryan was cleared to return to work in early December 2008 by his physician. The determination of a total disability for the purposes of SSA benefits was based on Ryan's SSA application which he filled out in December 2011, three years after his last day with Pace. After Pace fired Ryan on February 20, 2009, Ryan applied to numerous positions in search of work. Although Ryan did not succeed in his search for employment, the search suggests that he was able to continue working.

Because a genuine issue of material fact exists as to whether the Plaintiff could sufficiently perform the requirements of his position. Pace's motion for summary judgment is denied.

**B. ADA Retaliation Claims**

Ryan claims that Pace terminated his employment in retaliation for comments he made during the February 2009 FCE. Ryan specifically claims that his complaints

concerning the severity of the February 2009 FCE precipitated his discharge. The ADA prohibits employers from retaliating against any individual for engaging in protected activity. 42 U.S.C. § 12203(a); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). To prove retaliation, a plaintiff may use the direct or indirect method of proof. *Dickerson v. Bd. of Tr. of Cmty. Coll. Dist. No. 522,* 657 F.3d 595, 602 (7th Cir. 2011). Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden. *Id*. at 601. To establish a claim for ADA retaliation under the direct method of proof, the plaintiff must offer evidence that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Kersting*, 250 F.3d at 117. The ADA only prohibits retaliation for opposing or complaining about disability discrimination. *Id.* An informal complaint may constitute a protected activity for an ADA retaliation claim. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009).

Pace does not contest any specific element of Ryan's ADA retaliation claim. Rather, it argues that Ryan's claim should be judicially estopped because Ryan would not have been able to adequately perform the requirements of his position, as evidenced in the SSA determination. As discussed in the previous section, Ryan's SSA

application does not dispositively establish Ryan's condition at the time he was fired from Pace in 2009.

Ryan specifically argues that Pace retaliated against him because he complained of discrimination during the February 2009 FCE. During the February 2009 FCE, Ryan maintains that he was asked to do tasks which he was never required to perform throughout his employment as a Inspector Technician, such as walking with a 50 pound weight in a box and running on a treadmill. Ryan asserts that during his time as an Inspection Technician he was never required to run or physically carry items that heavy, and if he was required to transport a heavy item he would use a forklift. During the course of the FCE, Ryan asserted to the physician that the examination contained activities that were unduly burdensome and discriminatory. Ryan's complaint concerning the exertion level of the exercises in relation to the requirements of an Inspector Technician, constitutes a protected activity. Ultimately the results of the February 2009 FCE indicated that Ryan could not perform the essential functions of his position. Within days after Pace received the results of the February 2009 FCE, Ryan was fired. The proximately in time between Ryan's complaint that the FCE was more rigorous than necessary and the subsequent adverse action of his termination demonstrates a sufficient causal connection to maintain an ADA retaliation claim.

For the foregoing reasons, a genuine issue of material fact exists as to whether Pace retaliated against Ryan for complaining about the elevated testing requirements in the February FCE.

## II. FMLA Interference Claim

Ryan maintains that Pace interfered with his right to be reinstated into his previous position in violation of the FMLA. The FMLA prohibits an employer from interfering with an employee's attempt to exercise his FMLA rights. 29 U.S.C. § 2615(a)(1); *Kohls v. Beverly Enters. Wisc., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). To demonstrate an interference claim under the FMLA, a plaintiff must establish that (1) he was eligible for FMLA leave; (2) his employer was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take the leave; and (5) his employer denied him the FMLA benefits to which he was entitled. *Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010). Pace argues that it is entitled to summary judgment because Ryan was not entitled to FMLA benefits and therefore did not have a right to be reinstated back to his position.

An employee returning from FMLA leave is entitled to be returned to the same position the employee held when his leave commenced. 29 C.F.R. § 825.214(b). However, an employee does not possess an absolute right to return to his position. *Goelzer*, 604 F.3d at 993. The FMLA allows an employer to refuse to restore an

employee to the past position when that restoration would give a "right, benefit, or position of employment" that the employee would have not received if the employee had never left work. 29 U.S.C. § 2614(a)(3)(B); *Kohls*, 259 F.3d at 805. An employer does not violate the FMLA for failing to return an individual to his prior position after returning from leave if the employee would have been fired, even if they had not taken leave, and the termination decision was unrelated to the leave request. *Goelzer*, 604 F.3d at 993. However if Ryan can demonstrate that Pace fired him to prevent him from exercising his right to be reinstated in his original position, he can succeed on an interference theory. *See Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443-44 (7th Cir. 2011).

Pace argues that Ryan was not entitled to any FMLA benefits when he was dismissed from his position in February 2009 because he could not perform the essential functions of that position. Pace relies on Ryan's SSA application to establish that Ryan was incapable of performing his position at the time he was fired in February 2009. As discussed in the previous sections, Ryan's SSA application does not dispositively establish Ryan's condition at the time he was fired from Pace in 2009.

Ryan alleges that Pace interfered with his right to be reinstated in his position when they submitted the job description for the February 2009 FCE. Ryan alleges that Pace provided a more strenuous job description to specifically impede Ryan from

successfully being able to complete the requirements for the Inspection Technician position. The provided 2009 job description listed the Inspection Technician position as a medium PDC, whereas the initial description submitted for the June 2008 FCE listed the same position as light PDC. After the results of the more strenuous FCE test were provided to Pace, Ryan was terminated. The changed parameters of the detailed job description submitted for the February 2009 FCE evaluation meant that Ryan would have to clear a more substantial exertion hurdle to accomplish the necessary tasks. Ryan contends that the increased exertion level was purposefully given to prevent him from passing the examination and returning to his position. After the final results of the examination were forwarded to Pace he was terminated.

The Court concludes that a material dispute exists as to whether Ryan was interfered with in exercising his right to be reinstated in his position. Based on the unexplained increase in the job description workload requirements submitted for Ryan's FCE, a reasonable trier of fact could find that Ryan endured an interference with his FMLA rights.

### III.  Pace's Motion for Sanctions

Pace moves for sanctions against Ryan under Rule 11, claiming that Ryan's claims are frivolous. A court may impose sanctions on a party for making arguments

or filing claims that are frivolous, legally unreasonable, without factual foundation or asserted for an improper purpose. *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998).

Pace maintains that Ryan proceeded with the current suit in light of clear legal precedent that estops Ryan's claims. Pace relies on the concept of judicial estoppel and the Supreme Court's holding in *Cleveland* to support its assertions. Pace extensively references Ryan's 2011 SSA application in an attempt to demonstrate that Ryan's claims are directly contradicted by the current assertions of the ADA claim. This contradiction, in Pace's view warrants the imposition of Rule 11 sanctions.

The Supreme Court's holding in *Cleveland* stands for the proposition that an applicant's statements given for the purposes of acquiring disability benefits do not automatically judicially estop a subsequent ADA claim. *Cleveland*, 526 U.S. at 802-03. *Cleveland* clearly states that any inconsistency in statements could be sufficiently explained by the plaintiff and is not an automatic bar to the plaintiff's ADA claims. Ryan has done so here.

Ryan has sufficiently explained the inconsistency between his 2011 SSA benefit claim of disability and the current assertion that he could have continued to work in order to support his ADA claims. Ryan's claims are based on sufficient evidence coinciding with the relevant statutory foundation and case law to surpass Paces' motions

for summary judgment. Under the circumstances, Pace's reliance on *Cleveland* is misplaced and its motion for Rule 11 sanctions is denied.

## CONCLUSION

For the foregoing reasons, we deny Pace's motion for summary judgment in its entirety and deny Pace's motion for sanctions.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   October 18, 2012